IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAURA BORAKS BIANCHI )
) No. 18-144
v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL
SECURITY

**OPINION AND ORDER**

**SYNOPSIS**

Plaintiff filed an application for social security disability benefits. Plaintiff claimed disability due to mental and physical impairments, including bilateral knee and back issues, and anxiety and depressive disorders. Her application was denied initially, and upon hearing by an administrative law judge ("ALJ"). The Appeals Council denied her request for review. Before the Court are the parties' Cross-Motions for Summary Judgment. For the following reasons, Plaintiff's Motion will be denied, and Defendant's granted.

**OPINION**

**I.    STANDARD OF REVIEW**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3) 7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the

district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). Substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, No. No. 10-6540, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted). Nonetheless, I am not required to read the ALJ's opinion "in a vacuum." Knox v. Astrue, No. No. 9-1075, 2010 U.S. Dist. LEXIS 28978, at *22 (W.D. Pa. May 26, 2010).

## II. THE PARTIES' MOTIONS

Plaintiff first challenges the ALJ's treatment of the opinions of her treating primary care physician, Dr. Antoncic, and treating psychologist, Dr. Isacke. In particular, she objects to the ALJ's decision to afford greater weight to the opinions of non-examining state agency sources than to these treating sources. Further, she contends that the ALJ improperly addressed Listing 12.04.

### A. Dr. Antoncic

Dr. Antoncic opined that Plaintiff could sit, stand, and walk one hour each in an eight hour day. The 16F, 21F. The ALJ noted Dr. Antoncic's limitations, and then stated:

> However, the opinion has various asterisks changing the limitations…These asterisks were accompanied by explanations in at least two different handwritings. Two additional copies of the medical source statement without the asterisks or additional handwriting were present in Dr. Antoncic's records…An October 5, 2016, reviewed and clarified version of his opinion was submitted…At that time, he opined that the claimant could…sit, stand and walk 1 hour each during an 8-hour day….

The ALJ afforded Dr. Antoncic's statements little weight, both due to concerns about the asterisks and different handwriting, and because Dr. Antoncic saw Plaintiff for the first time on July 1, 2014, after the date last insured of June 30, 2014. The ALJ did, however, afford significant weight to the opinion of a non-examining state agency doctor, Dr. Mari-Mayans, limiting Plaintiff to light work. The ALJ noted that Dr. Mari-Mayans' opinion was consistent with the medical evidence "showing degenerative changes with conservative treatment, aside from her 2010 knee surgery, along with generally normal physical examination findings showing a normal gait and no neurological deficits."

Plaintiff asserts that Dr. Antoncic's statement from October 5, 2016, which has entirely consistent handwriting and reflects the same information as in the earlier, multi-handwriting

document, is entitled to great weight. The ALJ, however, is entitled to question the weight to which that opinion is entitled, particularly as the lack of explanation for the notations, all favorable to Plaintiff, leaves the situation unclear. <u>Cf</u>., <u>e.g</u>., <u>Phipps v. Comm'r of Soc. Sec</u>., No. 14-2306, 2015 U.S. Dist. LEXIS 171687, at *8 (E.D. Cal. Dec. 23, 2015). The situation at bar is unlike those in which a physician reviewed and endorsed a report completed by someone else. Whether or not one assumes that the different handwriting on the 2014 report belongs to two different people, the 2014 report states two sets of conclusions that are in direct conflict. The 2016 report then incorporates some, but not all, of the corrective notes from 2014 that appear to be in a different handwriting.

For example, in the 2014 statement, in response to the question of how often Plaintiff can tolerate unprotected heights, the box marked "occasionally" is checked. An asterisk appears next to that notation, and "never" is circled. In Dr. Antoncic's later "reviewed and clarified" statement dated October 5, 2016, "never" is checked for that question. In another example, in the 2014 statement, in response to the question of how often Plaintiff could tolerate humidity and wetness, the box marked "frequently" is checked. Asteriks appear next to that entry, "never" is circled, and there is a notation, in what appears to be different handwriting, "excessive sweating – meds + anxiety." In the 2016 statement, "never" is checked, with a handwritten note, "Increased humidity makes her joints ache worse. Knees especially." Contrary to Plaintiff's suggestion, therefore, the 2014 and 2016 statements do not clearly contain the same conclusions. There is no explanation in the record for the distinctions or the notations on the 2014 statement, and no evidence that Plaintiff's condition in 2016 was the same as on her date last insured. The ALJ did not err in approaching Dr. Antoncic's opinion.

4

As for Dr. Mari-Mayans, it is well settled that "[t]he ALJ may rely on a state agency consultant if the ALJ explains the basis for the weight given." Hitchcock v. Berryhill, No. 16-00378, 2017 U.S. Dist. LEXIS 219813, at *13 (N.D. Okla. Aug. 3, 2017). Here, the ALJ explained the basis for the weight afforded Dr. Mari-Mayans' opinion, and I find no error.

### B. Dr. Isacke

Dr. Isacke, Plaintiff's treating psychologist, completed a mental RFC assessment. Therein, she opined that Plaintiff had various extreme marked limitations. In one area, however, Dr. Isacke stated that Plaintiff had moderate impairment: in her "ability to maintain social functioning…(e.g.,…ability to get along with others and communicate effectively)." Dr. Isacke explained, in her response, that Plaintiff can get along with others if she could get to work, but that she avoids social situations due to anxiety. The ALJ gave this opinion little weight, as Dr. Isacke provided "only serial narrative reports that are close to identical and did not provide the actual therapy treatment records." The ALJ also pointed to Plaintiff's treating psychiatrist's notations that Plaintiff was stable with generally normal mental status examinations, and stable with treatment, other than "some mood and affect disturbances." In addition, the ALJ stated as follows: "[I]f Dr. Isacke's opinion was a true assessment of the claimant's functioning it would follow that she would need a higher level of care than routine outpatient therapy and medical management, but none was recommended."

The state agency consultant, Dr. Ostrich, opined that Plaintiff was moderately limited in various types of interactions with others, such as the ability to accept instructions and respond appropriately to criticism, and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. The ALJ afforded this opinion partial weight. In particular, the ALJ found that Dr. Ostrich's opinions regarding Plaintiff's social limitations were

5

inconsistent with evidence of record showing Plaintiff's ability to get along and spend time with family, friends, authority figures, and others; talk on the telephone regularly; and occasionally spend time with neighbors.

Plaintiff asserts that the ALJ improperly rejected Dr. Isacke's opinion, and erred in affording any weight to that of Dr. Ostrich. Plaintiff notes that Dr. Isacke's treatment records, found lacking by the ALJ, were submitted to the Appeals Council and that the ALJ should have sought the records himself. Although an ALJ has a duty to develop the record, that duty does not require the ALJ to search out relevant evidence that might be available. Myers v. Berryhill, No. 18-614, 2018 U.S. Dist. LEXIS 220577, at *20 (M.D. Pa. Dec. 12, 2018). Further, Plaintiff appeared before the ALJ with counsel, and under those circumstances, "the ALJ is entitled to assume that the claimant is making the strongest case possible for benefits." Id. Further, the provision of records for the first time to the Appeals Council does not require remand, as Plaintiff has not proffered any reason why the evidence was not submitted to the ALJ in the first instance. Finally, the lack of therapy records was not the ALJ's sole reason for assigning little weight to Dr. Isacke's opinion.

As for the ALJ's reasons for rejecting Dr. Isacke's opinion and affording partial weight to that of Dr. Ostrich, Plaintiff submits that her daily activities are not inconsistent with a disability. This may be so, but the ALJ may find those activities inconsistent with a medical opinion of record. "Generally, a conflict between a treating doctor's functional assessment of a claimant and evidence of claimant's ability to engage in daily activities may constitute a specific and legitimate reason for rejecting a treating physician's opinion." Goucher v. Colvin, No. 14-3009, 2015 U.S. Dist. LEXIS 86716, at *15 (N.D. Cal. July 2, 2015).[1] Plaintiff also points to

---

[1] I note the possibility that the ALJ's approach to the providers' opinions regarding social limitations, even if error, might prove harmless. At the hearing, Plaintiff's counsel asked the VE how his response would change if the

6

certain evidence, such as her medications, to which the ALJ did not refer. An ALJ, however, need not mention every piece of relevant evidence in the record. Lozada v. Barnhart, 331 F. Supp. 2d 325, 337 (E.D. Pa. 2004). It is apparent that the ALJ reviewed and referred to Plaintiff's psychiatric treatment records, alongside the other evidence, and his approach was sufficient. Regarding Dr. Ostrich, Plaintiff asserts only that his opinion was not worthy of weight because he was not an examining physician. As stated supra, an ALJ is entitled to rely on the opinion of a non-examining agency consultant – certainly, it is not improper to afford such an opinion partial weight, so long as it is done for adequately explained reasons.

### C. Listing 12.04

Second, Plaintiff challenges the ALJ's finding that she did not meet Listing 12.04, which refers to Depressive, Bipolar and Related Disorders. Listing 12.04 requires a claimant to satisfy both A and B, or both A and C. The B criteria of that Listing requires extreme limitation of one, or marked limitation of two, of certain areas of functioning. Plaintiff asserts that Dr. Isacke's report satisfies the B criteria; she does not assert that she meets the C criteria. I have already found, however, that the ALJ did not err in discounting Dr. Isacke's opinion. Therefore, the ALJ did not err in his approach to the Listing.

---

hypothetical included "that the individual could not have public contact and occasional contact with coworkers and supervisors." The VE responded that two of the positions would be eliminated, but not the photocopy operator machine position, which had approximately 15,000 people available in the national economy.

**CONCLUSION**

In sum, the ALJ's decision was supported by substantial evidence. Plaintiff's Motion will be denied, and Defendant's granted. An appropriate Order follows.

BY THE COURT:

*Donetta F. Ambrose*
_____

Judge Donetta Ambrose
Senior Judge, U.S. District Court

Dated: March 1, 2019

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAURA BORAKS BIANCHI )
                                         ) No. 18-144
    v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL
SECURITY

## ORDER OF COURT

AND NOW, this 1st day of March, 2019, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion is DENIED, and Defendant's GRANTED.

                                                                        BY THE COURT:

                                                                        /s/ Donetta F. Ambrose
                                                                        _____

                                                                        Judge Donetta Ambrose
                                                                        Senior Judge, U.S. District Court